| United States District Court<br>Western District of Washington | No. 2:24-cv-01102-TSZ |
|---|---|
| Duy T. Mai, Plaintiff,<br><br>vs.<br><br>United States, Defendant. | **Plaintiff's Motion for Summary Judgment**<br><br>Note on Motion Calendar:<br>March 11, 2025 |

## MOTION

Mr. Mai moves this Court for summary judgment pursuant to FRCP 56 and LCR 56.1. The Court should grant the motion because there is no genuine issue of material fact and Mr. Mai is entitled to judgment as a matter of law.

## INTRODUCTION

In 2000, when Mr. Mai was a juvenile, he was involuntarily committed for mental health treatment by a Washington state court. Now, in 2025, that commitment as a juvenile continues to permanently prohibit him from possessing a firearm under 18 USC § 922(g)(4). Mr. Mai challenges this lifetime prohibition as unconstitutional under the Second Amendment.

917 S 10th St
Tacoma, WA 98405
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Motion for Summary Judgment - 2:24-cv-01102-TSZ - Page 1 of 9

FACTS

In 1999, when he was 17 years old, Mr. Mai was involuntarily committed for mental health treatment by the King County Superior Court. Kertchen Dec'l at 18. The King County court later transferred the case to Snohomish County. *Id.* at 19. In February 2000, the Snohosmih County Superior Court extended the commitment for an additional 180 days of least restrictive alternative treatment. *Id.* at 12-16. The commitment expired in August 2000. *Id.* at 17. In 2014, Mr. Mai petitioned the King County Superior Court for restoration of his firearm rights under Wash. Rev. Code § 9.41.047. *Id.* at 4-11.

In support of his petition, he attached assessments from two licensed psychologists and a physician. *Id.* at 20-29. Dr. Stacy Cecchet concluded that Mr. Mai's depression "is now in full remission" and that he is "of low risk for future violence and nonviolent criminal behavior and does not present with any observable psychopathology." *Id.* at 29. Dr. Brendon Scholtz opined that Dr. Cecchet's assessment "reflect[s] appropriate clinical acumen and should be considered a valid and reliable forensic risk assessment. The undersigned agrees with the conclusions drawn by Dr. Cecchet." *Id.* at 22-23. Finally, Dr. Nancy Connolly, Mr. Mai's primary care physician, stated that he had never "demonstrated evidence of clinical depression" while under her care and that he does not "represent[] a significant suicide risk" or a "risk of harming others." *Id.* at 20.

The King County court granted the petition and restored Mr. Mai's firearm rights. *Id.* at 30-31. In doing so, the court found that Mr. Mai was "no longer required to participate in . . . treatment;" that he had "successfully managed the condition related to the commitment;" that he "no longer presents a substantial danger to himself, or the public;" and that "the symptoms related to the commitment are not reasonably likely to recur." *Id.* at 30.

917 S 10th St
Tacoma, WA 98405
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Motion for Summary Judgment - 2:24-cv-01102-TSZ - Page 2 of 9

ARGUMENT

**A. Mr. Mai is prohibited by 18 USC § 922(g)(4).**

18 U.S.C. § 922(g)(4) prohibits firearm possession by anyone "adjudicated as a mental defective or . . . committed to any mental institution." ATF regulations further define a commitment as "[a] formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily."[1] 27 C.F.R. § 478.11. Unlike the prohibition on felons or domestic violence misdemeanants, the prohibition for those involuntarily committed does not have any "exemption" clauses. *Compare* 18 U.S.C. § 921(a)(20) (providing that felony convictions that are expunged, set aside, pardoned, or for which an individual received a restoration of civil rights are not prohibiting), *and* 18 U.S.C. § 921(a)(33) (same language but for domestic violence misdemeanors), *with* 18 U.S.C. § 922(g)(4). There is a federal restoration of firearm rights statute, 18 U.S.C. § 925(c), but it has been useless for almost thirty years. *See United States v. Bean*, 537 U.S. 71 (2002).

In 2008, Congress passed the NICS Improvement Amendments Act of 2007 (NIAA), Pub. L. No. 110-180, 121 Stat. 2559 (2008). In it, Congress exempted involuntarily committed individuals from (g)(4)'s prohibition if the individual received a restoration of firearm rights from a state court, board, commission, or other lawful authority. NIAA § 105. However, the federal government would only recognize such a state restoration if state law matches certain requirements set out in the NIAA. *Id.* Washington state's restoration statute, Wash. Rev. Code §

---

[1] Mr. Mai acknowledges that he was involuntarily committed as a juvenile in 1999 by a Washington state court and that his commitment meets this definition.

Motion for Summary Judgment - 2:24-cv-01102-TSZ - Page 3 of 9

917 S 10th St
Tacoma, WA 98405
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

9.41.047, does not meet the NIAA's requirements. Thus, residents of Washington state with an involuntary commitment are still permanently prohibited from possessing a firearm by federal law even if their right to possess a firearm is restored under Washington state law. *See also Mai v. United States*, 952 F.3d 1106 (9th Cir. 2020).

**B. Section 922(g)(4) is unconstitutional as applied to Mr. Mai because it has no historical analogue.**

<u>1. The Supreme Court's historical analogue framework places the burden on the Government.</u>

The correct framework in a Second Amendment challenge "involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024). "A court must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances." *Id.*

> For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations. Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding. And when a challenged regulation does not precisely match its historical precursors, "it still may be analogous enough to pass constitutional muster." The law must comport with the principles underlying the Second Amendment, but it need not be a "dead ringer" or a "historical twin."

*Id.* (internal citations omitted). Once a challenge is filed, "the burden falls on the [government to show that the challenged regulation] is consistent with this Nation's historical tradition of firearm regulation." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 33-34 (2022). "Only if [the government can] carry that burden can they show that . . . the Second Amendment . . . does

917 S 10th St
Tacoma, WA 98405
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Motion for Summary Judgment - 2:24-cv-01102-TSZ - Page 4 of 9

1  not protect petitioners' proposed course of conduct." *Id*. at 34. Thus, the burden is not on a Mr.

2  Mai to prove that 18 USC § 922(g)(4) is unconstitutional as applied to him; rather, the burden is

3  on the Government to prove that the statute is constitutional because it comports with the

4  tradition and history of the Second Amendment as recognized during the time of ratification.

5  Importantly, every Second Amendment challenge must be analyzed using this historical

6  analogue standard. In various cases, government entities have argued that only "responsible

7  people" fall within the scope of the Second Amendment. The Supreme Court explicitly rejected

8  such a standard in *Rahimi*:

> Finally, in holding that Section 922(g)(8) is constitutional as applied to Rahimi, we reject the Government's contention that Rahimi may be disarmed simply because he is not "responsible." "Responsible" is a vague term. It is unclear what such a rule would entail. Nor does such a line derive from our case law. In *Heller* and *Bruen*, we used the term "responsible" to describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right. But those decisions did not define the term and said nothing about the status of citizens who were not "responsible." The question was simply not presented.

144 S. Ct. at 1903; *id.* at 1910 ("Nor do we purport to approve in advance other laws denying firearms on a categorical basis to any group of persons a legislature happens to deem, as the government puts it, 'not responsible.'") (Gorsuch, J., concurring); *id.* at 1944 ("The Government, for its part, tries to rewrite the Second Amendment to salvage its case. It argues that the Second Amendment allows Congress to disarm anyone who is not 'responsible' and 'law-abiding.' Not a single Member of the Court adopts the Government's theory. Indeed, the Court disposes of it in half a page—and for good reason. The Government's argument lacks any basis in our precedents and would eviscerate the Second Amendment altogether.") (Thomas, J., dissenting).

917 S 10th St
Tacoma, WA 98405
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Motion for Summary Judgment - 2:24-cv-01102-TSZ - Page 5 of 9

### 2. *Rahimi* casts doubt on permanent firearm prohibitions.

The holding of *Rahimi* is summed up by Chief Justice Roberts in the lead opinion: "[W]e conclude only this: An individual found by a court to pose a credible threat to the physical safety of another may be *temporarily disarmed* consistent with the Second Amendment." *Id.* at 1903 (emphasis added). Formulation of this holding relied on surety laws as a historical analogue to § 922(g)(8). *Id.* at 1899-1900. To that end, the lead opinion specifically invoked the temporal nature of surety bonds as a parallel to the protection order that had been issued against Rahimi: "Moreover, like surety bonds of limited duration, Section 922(g)(8)'s restriction *was temporary* as applied to Rahimi. Section 922(g)(8) only prohibits firearm possession so long as the defendant 'is' subject to a restraining order. In Rahimi's case that is one to two years after his release from prison." *Id.* at 1902 (emphasis added).

Mr. Mai does not argue that being temporarily disarmed after an involuntary commitment where the committing court makes a finding that the person to be committed poses a danger to himself or others is inconsistent with the Second Amendment as such an argument would truly be foreclosed by the Supreme Court. Instead, he argues that he is now *permanently* disarmed and this permanent disarmament violates the Second Amendment. The question of whether the Second Amendment can tolerate a permanent disarmament was explicitly reserved in *Rahimi*.

For example, as quoted above, the lead opinion concluded that the "only" question answered is that the Second Amendment can tolerate *temporary disarmament* if an individual is found by a court to pose a credible threat to the physical safety of another. *Id.* at 1903. Presciently, Justice Gorsuch also remarked that "Our resolution of Mr. Rahimi's facial challenge to § 922(g)(8) necessarily leaves open the question whether the statute might be unconstitutional

917 S 10th St
Tacoma, WA 98405
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Motion for Summary Judgment - 2:24-cv-01102-TSZ - Page 6 of 9

1  as applied in particular circumstances." *Id.* at 1909 (Gorsuch, J., concurring). He went on to note

2  that "*We do not resolve whether the government may disarm an individual permanently.*" *Id.* at

3  1909-10 (Gorsuch, J., concurring) (emphasis added). In fact, "the case before us does not pose

4  the question whether the challenged statute is always lawfully applied . . . but only whether this

5  one has *any* lawful scope. Nor should future litigants and courts read any more into our decision

6  than that." *Id.* at 1910 (Gorsuch, J., concurring). The takeaway from *Rahimi* is that whether the

7  Second Amendment can tolerate the lifetime application of a firearm prohibition remains an

8  open question.

9        There is scant historical evidence regarding the relationship between mental illness and

10 firearm rights. "[S]cholars have searched in vain through eighteenth-century records to find any

11 laws specifically excluding the mentally ill from firearms ownership." *Mai v. United States*, 974

12 F.3d 1082, 1088 (9th Cir. 2020) (Bumatay, J., dissenting from denial of rehearing en banc).

> Influential philosophers of the day understood that rights attach with the attainment of "reason" and, correspondingly, the loss of rights persisted only through the loss of reason. This understanding accorded with a deeply rooted common law tradition recognizing that mental illness was not a permanent condition. Thus, an "insane" person was one who "by disease, grief, or other accident hath lost the use of his reason." But "the law always imagines, that the[] accidental misfortunes [that caused the lunacy] may be removed" and at that point the person's rights restored.

*Id.* at 1089. "From this historical record a clear picture emerges: mental illness was considered a temporary ailment that only justified a temporary deprivation of rights. At the time of the Founding, the idea that the formerly mentally ill were permanently deprived of full standing in the community was nowhere to be found." *Id.* at 1090.

917 S 10th St
Tacoma, WA 98405
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Motion for Summary Judgment - 2:24-cv-01102-TSZ **-** Page 7 of 9

Because there is no historical analogue to the *permanent* deprivation of the Second Amendment rights Mr. Mai has suffered, § 922(g)(4)'s prohibition as it applies to him is unconstitutional.

## CONCLUSION

Based on the foregoing, this Court should grant summary judgment.

I certify that this memorandum contains _2,002_ words, in compliance with the Local Civil Rules.

Respectfully submitted,

_____
Vitaliy Kertchen WSBA#45183
Attorney for Mr. Mai
Date: 2/9/25

917 S 10th St
Tacoma, WA 98405
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Motion for Summary Judgment - 2:24-cv-01102-TSZ - Page 8 of 9

1    I hereby certify that on 2/9/25, I electronically filed the foregoing with the clerk of the

2 court using the CM/ECF System, which in turn automatically generated a Notice of Electronic

3 Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF

4 for the foregoing specifically identifies recipients of electronic notice. I hereby certify that I have

5 mailed by United States Postal Service the document to the following non-CM/ECF participants:

6 None.

7

8    Respectfully submitted,

9
10
11    /s/ Vitaliy Kertchen
12   _____
13    Vitaliy Kertchen

917 S 10th St
Tacoma, WA 98405
253-905-8415
vitaliy@kertchenlaw.com
www.kertchenlaw.com

Motion for Summary Judgment - 2:24-cv-01102-TSZ - Page 9 of 9