The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DUY T. MAI,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 2:24-cv-01102-TSZ<br><br>UNITED STATES' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>Noted for Consideration: December 19, 2025 |

## I. ARGUMENT

The government has amply shown the "historical underpinning" (Dkt. 31 at 2) for laws that categorically disarm those that a legislature has deemed dangerous, and *United States v. Duarte*, 137 F.4th 743 (9th Cir. 2025) (en banc), governs the result here. Congress's passage of 18 U.S.C. § 922(g)(4) reflects a reasonable legislative determination that those who have been involuntarily committed present a special danger of misuse of firearms. Mai offers no convincing rebuttal to *Duarte* and instead tries to raise a new claim (found nowhere in his complaint or prior filings) that "children are different." Dkt. 31 at 7. The Court should reject Mai's attempt to belatedly inject new claims into this case, and in any event, his claim is belied by the record because his involuntary commitment lasted beyond his 18th birthday and his mental-health problems continued into his



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

adult years. The Court should deny Mai's motion for summary judgment, grant the government's cross-motion, and dismiss this action with prejudice.

**A. Mai ignores the binding reasoning in *Duarte* as well persuasive out-of-circuit authority.**

At the outset, Mai spends almost a page of his response fighting a straw-man argument, discussing *Duarte*'s analysis of "historical felony punishments" but then pointing out that he is "not a felon" and "[i]n fact, he has no criminal history of any kind." Dkt. 31 at 3. That statement misses the point. The government is not suggesting that under *Duarte*, Mai may be disarmed because he belongs to a category of "those who have committed the most serious crimes." 137 F.4th at 755. Instead, as made clear in the government's cross-motion (*see, e.g.*, Dkt. 26 at 13 & n.5), the principle that "legislatures were permitted to categorically disarm those they deemed dangerous without having to perform an individualized determination of dangerousness as to each person in a class of prohibited persons" is the holding from *Duarte* that the government relies on here, and the principle that binds this Court. 137 F.4th at 760 (internal quotation marks and citation omitted).

As the government has shown (Dkt. 26 at 20–22), and as Mai does not meaningfully contest, Congress reasonably determined that persons who have at one time been involuntarily committed to a mental institution pose a higher risk of violence. *See United States v. Mai*, 952 F.3d 1106, 1116–18 (9th Cir. 2020); *see also Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 116 (1983) (Congress "made no exception for subsequent curative events" and "obviously felt that" a person who "may be deemed cured and released" was nevertheless "too much of a risk to be allowed firearms privileges"). Accordingly, under *Duarte*, and "consistent with our historical tradition," the government "is empowered to regulate," on a categorical basis, gun possession by that class of persons. 137 F.4th at 761. In assessing the constitutionality of § 922(g)(4), the



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

"appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *United States v. Rahimi*, 602 U.S. 680, 692 (2024). As *Duarte* explains, keeping guns out of the hands of those "deemed dangerous" is consistent with those principles. *See* 137 F.4th at 759–61; *cf. Rahimi*, 602 U.S. at 698 ("we do not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by the legislature to present a special danger of misuse"). *Cf. United States v. VanDyke*, 157 F.4th 1082, 1088 (9th Cir. 2025 (reaffirming that there "exists a tradition of restrictions on firearm possessions for groups that were deemed dangerous by legislatures"); *United States v. Stennerson*, 150 F.4th 1276, 1289 (9th Cir. 2025) (history and tradition supports that "legislatures could disarm 'groups' of people without any individualized determination" (citation omitted)).

Mai tries to avoid the conclusion dictated by *Duarte*—that § 922(g)(4), just like 18 U.S.C. § 922(g)(1), is constitutional in all its applications—by arguing that the true focus in *Duarte* was "less on the permanency of the prohibition and more on whether a prohibition can apply to a person convicted of a non-violent felony as opposed to a violent felony." Dkt. 31 at 3. Nonsense. Mai's argument flatly ignores that disarmament under § 922(g)(1) is just as permanent as disarmament under § 922(g)(4) (indeed, it is more so, considering that 34 U.S.C. § 40915 permits at least some individuals to obtain relief from the firearms disability imposed under § 922(g)(4)).[1] Despite the permanence of disarmament under § 922(g)(1), the Ninth Circuit still found the statute categorically constitutional as to *all* felons—violent and non-violent alike, and regardless of the recency of their felony conviction. Mai also ignores that § 922(g)(4) presents an arguably even stronger basis for categorical disarmament than § 922(g)(1): not all felonies are necessarily violent

[1] *See also infra* at 7.



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

or dangerous, but everyone subject to § 922(g)(4) was at one point adjudicated—under procedures that accord with due process—*actually* dangerous. *See Mai*, 952 F.3d at 1110.

Mai also takes issue with the purportedly permanent nature of disarmament under § 922(g)(4) by arguing that *Duarte* relied on historical laws that did not impose permanent firearms bans. *See* Dkt. 31 at 4. But he provides no support for his supposition that, as to some of the historical laws referenced in *Duarte*, "prohibitions would lift once the disabling condition ceased to exist." Dkt. 31 at 4. And he ignores the host of other categorical and permanent laws *Duarte* discusses (*see* Dkt. 26 at 13), including laws disarming Catholics, those who refused to swear loyalty oaths, slaves, and free Black people. 137 F.4th at 759. Those laws also must be considered in the analysis, and they support § 922(g)(4)'s categorical application.

**B. Mai's remaining arguments are unavailing.**

Mai's other arguments do not help him. First, he misunderstands why *Rahimi* supports the government's position. Dkt. 31 at 5. *Rahimi* sets forth the methodology for resolving Second Amendment challenges and makes clear that for this Court to find that a "statutory prohibition is consistent with our nation's historical tradition of firearm regulation," the government need only show that "the challenged regulation is consistent with the *principles* that underpin our regulatory tradition" and faithfully applies the "'balance struck by the founding generation to modern circumstances.'" 602 U.S. at 692 (emphasis added, quoting *New York Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1, 29 (2022)). That is the proposition for which the government cites *Rahimi*, and that is the test the government—including through reference to *Duarte*—has satisfied here. To be sure, *Rahimi*'s analysis of 18 U.S.C. § 922(g)(8) supports the constitutionality of § 922(g)(4), because § 922(g)(4)—like § 922(g)(8)—requires there to have been robust judicial determinations about a defendant's dangerousness. But contrary to Mai's assertion, the government has not suggested that *Rahimi* is "dispositive" (Dkt. 31 at 5) simply because the Supreme Court squarely



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

upheld temporary disarmament under 18 U.S.C. § 922(g)(8)(C)(i). The government's argument is that, applying *Rahimi*'s methodology, § 922(g)(4) is "'relevantly similar' to laws that our tradition is understood to permit." 602 U.S. at 690 (quoting *Bruen*, 597 U.S. at 29).[2]

In any event, Mai does not meaningfully counter the government's position that § 922(g)(4) is constitutional as applied to him, considering the troubling facts of his involuntary commitment and subsequent mental-health issues, which the government outlined in its cross-motion. *See* Dkt. 26 at 3–10. Instead, Mai raises an entirely new claim: that his "status as a juvenile at the time of his commitment is relevant in this case" because "children are different." Dkt. 31 at 7. Mai primarily cites Eighth-Amendment cases holding that children are "constitutionally different from adults" in the context of sentencing. *Id.* And he faults the government for making "no attempt to provide any historical analogue for the proposition that a child with mental health issues could be permanently stripped of his constitutional rights well into adulthood and after the mental illness has resolved and ceased for several decades." *Id.* at 7–8. Mai's argument suffers from several failings.

First, the Supreme Court has made clear that the government need not identify historical regulations that are a "dead ringer" or a "historical twin" for a modern regulation to pass constitutional muster. *Rahimi*, 602 U.S. at 691–92. Yet that is exactly what Mai suggests the government is required to do here. In his view, it must identify an exact historical match to his circumstances, but that is not the test. Rather, the "appropriate analysis involves considering

---

[2] Mai cites discussions from out-of-circuit cases addressing 18 U.S.C. § 922(g)(3), where courts were analogizing between historical laws disarming the mentally ill and § 922(g)(3)'s modern disarmament of controlled-substance users and those addicted to controlled substances. *See* Dkt. 31 at 6. But he does not meaningfully counter the fact that the only published circuit decision addressing § 922(g)(4) held that the "relative dearth" of eighteenth-century laws excluding the mentally ill from firearms ownership is explained by the "ad hoc and informal" way that the mentally ill were cared for at the time, and ultimately concluded that § 922(g)(4) is relevantly similar to laws that our "*tradition is understood to permit*." *United States v. Gould*, 146 F.4th 421, 428–29 (4th Cir. 2025). Mai objects that *Gould* resolved a facial rather than an as-applied challenge, but he does not explain why that makes a material difference to the historical inquiry.



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 602 U.S. at 692. And as *Duarte* explains, keeping guns out of the hands of those "deemed dangerous" is consistent with those principles. *See* 137 F.4th at 759–61.

Second, Mai's argument misrepresents the facts. Mai's involuntary commitment began when he was 17, but it "lasted more than nine months" and "spanned his eighteenth birthday." *Mai*, 952 F.3d at 1110. Moreover, his mental-health problems "continued after high school," including into his early 20s when he was a student at the University of Washington. Dkt. 26 at 8. Cases addressing the fact that children "are constitutionally different than adults" are inapposite and do not help him.

Third, Mai's attempt to inject this issue into this litigation comes too late. Nowhere in his complaint or in any prior filings has he raised the claim that he cannot be disarmed based on his involuntary commitment because it began when he was a juvenile. The Court should ignore Mai's belated and undeveloped argument that his status as a juvenile when his problems first manifested is relevant to the Second-Amendment analysis.

Finally, Mai says that the revival of the federal restoration procedure "does not diminish or vitiate" his as-applied challenge because it might not provide him with relief. Dkt. 31 at 8. But his challenge contends that § 922(g)(4) is unconstitutional as applied to him in part because it is effectively a permanent ban, and the revival of the federal restoration process means that is not necessarily true. Considering that revival, this Court should dismiss Mai's claim; he should seek relief through that process when it opens rather than asking this Court to treat his current prohibition as permanent.

Nor is there any support for Mai's argument that 18 U.S.C. § 925(c) is an insufficient avenue for restoring his rights because it does not include "factors that will make an applicant presumptively eligible." Dkt. 31 at 8. The government's point here is that, while Mai is indeed



**UNITED STATES ATTORNEY**
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
206-553-7970

currently disabled from possessing firearms, he is wrong to suggest that his disability is *necessarily* permanent such that it violates his Second Amendment rights. If, as Mai contends, he is indeed not "likely to act in a manner dangerous to public safety," § 925(c), then there is a significant possibility that his rights could be restored. The Court should wait for Mai to seek relief through the federal restoration process in the first instance—a process that allows him to seek further judicial review if necessary. *See* Dkt. 26 at 25–26.

## II. CONCLUSION

For the foregoing reasons, the United States respectfully asks this Court to deny Mai's motion for summary judgment, grant the government's cross-motion, and dismiss this action with prejudice in its entirety.

DATED this 18th day of December, 2025.

CHARLES NEIL FLOYD
United States Attorney

*s/ Tania M. Culbertson*
TANIA M. CULBERTSON, WSBA No. 45946
ALIXANDRIA K. MORRIS, TX No. 24095373
REBECCA S. COHEN, WSBA No. 31767
Assistant United States Attorneys
United States Attorney's Office
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Fax: 206-553-4067
Email: tania.culbertson@usdoj.gov
Email: alixandria.morris@usdoj.gov
Email: rebecca.cohen@usdoj.gov

*Attorneys for Defendant*

I certify that this memorandum contains 2,021 words, in compliance with the Local Civil Rules.