UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DUY T. MAI, Plaintiff, v. UNITED STATES OF AMERICA, Defendant. | C24-1102 TSZ ORDER |

THIS MATTER comes before the Court on Plaintiff Duy Mai's Motion for Summary Judgment, docket no. 20, and the United States's Cross-Motion for Summary Judgment, docket no. 26. Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following order.

**Background**

In October 1999, a state court committed Plaintiff involuntarily for mental health treatment after he threatened himself and others. See Att. to Kertchen Decl. (docket no. 21 at 18 & 26); Ex. B to Morris Decl. at 1–2 (docket no. 29-2). As a result of his involuntary commitment, Plaintiff has been prohibited from possessing a firearm under federal law. Federal law prohibits firearm possession by anyone "adjudicated as a mental defective or . . . committed to any mental institution." 18 U.S.C. § 922(g)(4).

A commitment to a mental institution is defined as "[a] formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily." 27 C.F.R. § 478.11. Mai concedes that his 1999 commitment satisfies this definition. Mai Mot. at 3 n.1 (docket no. 20).

In 2017, Mai filed a lawsuit seeking restoration of his firearm rights, arguing that as applied to him, § 922(g)(4) was unconstitutional. See Compl. at ⁋ 17 (docket no. 1). Applying an intermediate scrutiny means-end test, the Ninth Circuit affirmed the district court's dismissal of Mai's complaint, holding that § 922(g)(4) is a "reasonable fit" for Congress's goal of reducing gun violence. Mai v. United States, 952 F.3d 1106, 1112, 1120–21 (9th Cir. 2020).

The Supreme Court has since rejected applying means-end scrutiny in the Second Amendment context. See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 19, 24 (2022). "Bruen established a two-step historical framework to determine whether a firearm regulation violates the Second Amendment." United States v. Martinez, 169 F.4th 1147, 1153 (9th Cir. 2026). At step one, the Court first determines whether "the Second Amendment's plain text covers an individual's conduct." Bruen, 597 U.S. at 24. If it does, then the second step requires "[t]he government [to] justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Id.

On July 24, 2024, Mai filed the present action, seeking declaratory judgment that § 922(g)(4) as applied to him violates his Second Amendment rights. Compl. at ⁋ 1

(docket no. 1 at 6). Mai anchors his renewed challenge on the new standards articulated in Bruen. Id. at ¶¶ 19–20, p. 5. Both parties moved, pursuant to Federal Rule of Civil Procedure 56, for summary judgment.[1] See Mots. (docket nos. 20 & 26).

Mai argues that § 922(g)(4) effects a permanent disarmament that violates the Second Amendment. Mai Mot. at 6 (docket no. 20). The Government asks that the Court decline to consider the merits of Mai's as-applied challenge because the Attorney General has now created an avenue to restore firearm rights. Gov. Opp. and Mot. at 24–26 (docket no. 26). Until 2002, the Secretary of the Treasury was vested with authority to grant relief from a prohibition under § 922(g)(4) if it was established to the Secretary's satisfaction that certain preconditions were met. See 18 U.S.C. § 925(c) (2000). The Secretary delegated this authority to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). See United States v. Bean, 537 U.S. 71, 74 (2002). Since 1992, an appropriations bar has prevented the ATF from using funds to investigate or act on § 925(c) applications for relief from federal firearms disabilities. Id. at 74–75. In 2002, Congress amended § 925(c) and conferred authority on the Attorney General to decide

---

[1] The Court notes that, in response to Mai's complaint, the United States raised several affirmative defenses, including collateral estoppel. Answer at 5 (docket no. 7). In the parties' summary judgment briefing, the United States has not argued that it is entitled to relief based on any of those affirmative defenses, and the Court therefore considers them waived or abandoned. See Power Probe Grp., Inc. v. Innova Elecs. Corp., 2021 WL 5119362, at *3 (D. Nev. Sept. 8, 2021) ("Defendants may always abandon an affirmative defense during litigation, and plaintiffs are not required to spend their limited pages anticipating arguments that may not be made."); Deirmenjian v. Deutsche Bank, A.G., 2010 WL 3034060, at *7 & n.110 (C.D. Cal. July 30, 2010) (collecting cases holding that a party abandons claims or affirmative defenses when the party advances no evidence or argument in support of them in response to a summary judgment motion). The Court had previously stricken the trial date and related deadlines based on the parties' representations that "the case will resolve through cross-motions for summary judgment." See Minute Order at 1 (docket no. 19).

§ 925(c) requests. See Homeland Security Act of 2002, Pub. L. No. 107-296, § 1112(f)(5), 116 Stat. 2135 (2002). Last year, the Attorney General issued an interim final rule withdrawing the delegation of authority to the ATF to administer § 925(c). See Withdrawing the Attorney General's Delegation of Authority, 90 Fed. Reg. 13,080 (Mar. 20, 2025). A final rule has since been announced,[2] see 28 C.F.R. § 107.60 (effective September 21, 2026), and the Court requested supplemental briefing from the parties addressing whether Mai's disarmament might not be considered permanent because he can now apply for relief pursuant to § 925(c). See Minute Order (docket no. 36). Having considered the supplemental briefs, the Court concludes that summary judgment in favor of the United States is warranted.

## Discussion

### A. Summary Judgment Standard

The Court shall grant summary judgment if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Beard v. Banks, 548 U.S. 521, 529 (2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." Fair Hous. Council of

[2] Mai appears eligible to apply for relief pursuant to the new rule. See 28 C.F.R. § 107.60.

Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001). The parties do not dispute the underlying facts in this case.[3]

**B. As-Applied Challenge**

Mai argues 18 U.S.C. § 922(g)(4) is unconstitutional as applied to him because his disarmament is effectively permanent. Mai Mot. at 4–8 (docket no. 20). "A statute is unconstitutional 'as applied,' when 'by its own terms, [it] infringe[s] constitutional freedoms in the circumstances of the particular case.'" Martinez, 169 F.4th at 1153 (quoting United States v. Christian Echoes Nat'l Ministry, Inc., 404 U.S. 561, 565 (1972)).

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend II. The Supreme Court has found that the text of the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." District of Columbia v. Heller, 554 U.S. 570, 576, 592 (2008). The Second Amendment, however, does not provide a "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626. In other words, "the right secured by the Second Amendment is not unlimited." Id.

[3] The parties do not disagree about the circumstances concerning Mai's involuntary commitment and the events that have followed. The only material difference between Mai's previous complaint (in Case No. C17-561) and the current one is the change in substantive law and his new "as-applied" challenge. Although the Government has deposed Mai and a deposition transcript was filed in connection with the pending motions, no material question of fact has been raised by the parties.

Applying the first step of the Bruen test, Mai is part of "the people" who have Second Amendment rights, and the prohibition on possessing a firearm after having been subject to involuntary commitment at a mental institution meaningfully constrains his right to keep and bear arms. See United States v. Stennerson, 150 F.4th 1276, 1288 (9th Cir. 2025); Martinez, 169 F.4th at 1153. The plain text of the Second Amendment therefore applies. Stennerson, 150 F.4th at 1288; United States v. Gould, 163 F.4th 795, 800 (4th Cir. 2026).

The Court now applies step two of the Bruen test. Assuming without deciding that a permanent disarmament under § 922(g)(4) would be unconstitutional, the Court concludes that Mai's disarmament pursuant to § 922(g)(4) is not permanent given the Attorney General's recently promulgated regulations pursuant to § 925(c). Case law on 34 U.S.C. § 40915 is instructive on this issue. Under § 40915, Congress has permitted states that meet certain requirements to grant relief from § 922(g)(4)'s firearm ban.[4] See Mai, 952 F.3d at 1111–12. Courts have observed that disarmament under § 922(g)(4) is not permanent for individuals who may petition for relief pursuant to § 40915. See Gould, 163 F.4th at 806 (noting West Virginia enacted a state program that complies with § 40915 and therefore, "disarmament under § 922(g)(4) isn't categorically permanent in

---

[4] On February 26, 2015, pursuant to RCW 9.41.047(3), a Washington state court entered an order restoring Plaintiff's right to possess firearms. Att. to Kertchen Decl. (docket no. 21 at 30). After reviewing favorable forensic psychological evaluations of Mai and letters from healthcare professionals, the state court found that (1) "Mr. Mai is no longer required to participate in court-ordered inpatient or outpatient treatment;" (2) "Mr. Mai has successfully managed the condition related to the commitment;" (3) "Mr. Mai no longer presents a substantial danger to himself, or the public; and" (4) "[t]he symptoms related to the commitment are not reasonably likely to recur." See id. at 20–31. However, the Washington statute does not satisfy the federal requirements under § 40915.

West Virginia"); United States v. Bartley, 9 F.4th 1128, 1136 n.4 (9th Cir. 2021) (explaining that Idaho's provision for the restoration of rights under § 922(g)(4) means that the defendant's "prohibition is not a lifetime ban, in effect regardless of later mental health status"); Susman v. Sullivan, 2026 WL 878874, at *9 (W.D.N.Y. Mar. 31, 2026) ("Where a state provides a process for relief from the prohibitions of section 922(g)(4), however, the prohibition is not a permanent disqualification.") (collecting cases).

The Court discerns no basis to distinguish between § 925(c) and § 40915 with regard to their effects on the permanency of disarmament under § 922(g)(4). The Ninth Circuit recognized that these provisions are analogous, stating that "[u]nless Congress or the Washington legislature enacts a program relieving [Mai] from § 922(g)(4)'s prohibition, the law" constitutes a lifetime ban. Mai, 952 F.3d at 1115. Mai now has the opportunity to regain his federal firearm rights under § 925(c) if he establishes "to the satisfaction of the Attorney General that the circumstances regarding the disability (or disabilities), and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety, and that the granting of the relief would not be contrary to the public interest." 28 C.F.R. § 107.20(a). Mai's disarmament is therefore no longer permanent and § 922(g)(4) is not unconstitutional as applied to him.[5]

[5] Mai contends the federal firearm restoration procedure under § 925(c) is "purely discretionary." Mai Supp. Brief at 2 (docket no. 37). The statute, however, clearly authorizes judicial review of determinations made under that statute. See 18 U.S.C. § 925(c) ("Any person whose application for relief from disability is denied by the Attorney General may file a petition with the United States district court."). Mai further contends that (1) a reviewing court's standard of review of the Attorney General's decision is not identified in the statute and is therefore unknown; and (2) no indication has been provided

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Plaintiff Duy Mai's Motion for Summary Judgment, docket no. 20, is DENIED. The United States's Cross-Motion for Summary Judgment, docket no. 26, is GRANTED.

(2) The Clerk is directed to enter Judgment consistent with this Order, to send a copy of this Order and the Judgment to all counsel of record, and to CLOSE this case.

IT IS SO ORDERED.

Dated this 25th day of September, 2026.

Thomas S. Zilly
United States District Judge

concerning the timeline for processing applications. Mai Supp. Brief at 2 (docket no. 37). Neither of these arguments bear on whether his disarmament under § 922(g)(4) is permanent.